**The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Dated: January 14 2020

_____
John P. Gustafson
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| **In Re** ) | **Case No. 19-42174** |
| ) | |
| California Palms, LLC, ) | |
| ) | **Chapter 11** |
| **Debtor.** ) | |
| ) | |
| ) | **JUDGE JOHN P. GUSTAFSON** |

### MEMORANDUM DECISION AND ORDER RE: MOTION TO DISMISS

This case is before the court on Creditor Pender Capital Asset Based Lending Fund I, LP's ("Pender") Motion to Dismiss ("Motion") [Doc. #20], filed on December 12, 2019. Debtor California Palms, LLC, Non-Debtor California Palms Addiction Recovery Campus, Inc., and Interested Party Sebastian Rucci ("California Palms[1]") filed a Response to Pender's Motion to

---

[1]/ Unless otherwise noted, the court may refer to all three parties that responded to Pender's Motion as "California Palms." However, the court is mindful of the fact that California Palms, LLC is the Debtor in this case, whereas California Palms Addiction Recovery Campus, Inc. and Sebastian Rucci are non-debtors. The court will refer to individual entities as appropriate.

1

Dismiss [Doc. #37] on December 26, 2019. Pender filed a Reply to California Palms' Response on December 29, 2019. [Doc. #40].

In its Motion, Pender argues that dismissal of California Palms' Chapter 11 case is warranted for three reasons: (1) the filing of the present Chapter 11 case is barred by this court's order that dismissed California Palms' earlier Chapter 11 case ("Prior Dismissal Order") [Case No. 19-40267, Doc. #120]; (2) this present Chapter 11 case should be dismissed for cause pursuant to 11 U.S.C. §1112(b); and (3) the present Chapter 11 case is prohibited by the *Rooker-Feldman* doctrine. In its Response, California Palms disputes all three of Pender's claims, arguing that: (1) the Prior Dismissal Order did not bar the filing of the present case; (2) this second Chapter 11 case is a legitimate attempt at maximizing the value of California Palms' estate such that there is not cause for dismissal under §1112(b); and (3) the *Rooker-Feldman* doctrine is not applicable. The court held a hearing on Pender's Motion on December 30, 2019 at which Pender and California Palms further argued in favor of their respective positions.

Upon review of the facts of this case and the arguments of the parties, the court finds that dismissal is warranted pursuant to the 11 U.S.C. §1112(b) "bad faith" factors set forth in *Trident Assocs. Ltd. P'ship v. Metropolitan Life Ins. Co.* (*In re Trident Assocs. Ltd. P'ship*), 52 F.3d 127, 131 (6th Cir. 1995). Thus, the court will grant Pender's Motion and dismiss California Palms, LLC's second Chapter 11 case. The court will remand the removed foreclosure action, Adv. Pro. No. 19-04040, back to the Mahoning County Court of Common Pleas by separate order.

## FACTUAL BACKGROUND

The relevant factual background for the court's decision on Pender's Motion to Dismiss includes both this Chapter 11 case and California Palms' prior Chapter 11 case, Case No. 19-40267. Accordingly, the court will address the facts of each case that are relevant to determining whether or not the court should dismiss the present case.

### Case No. 19-40267, California Palms I

On February 27, 2019, Debtor California Palms, LLC filed its first petition for Chapter 11 relief, averring that it was a health care business[2] as defined by 11 U.S.C. §101(27A) with its

---

[2]/ While the specifics regarding California Palms' business arrangement remain lacking in detail, there is no dispute that Debtor California Palms, LLC is the owner of the Austintown Property and that Non-Debtor California Palms Addiction Recovery Campus, Inc. is the primary tenant at the Austintown Property. [Doc. #1, Ex. 1, p. 15]. The Non-Debtor entity manages what appears to be a behavioral health treatment business that caters to military veterans, but its financial health, actual business practices, and precise legal relationship with Debtor California Palms, LLC remain

2

principal place of business at 1051 N. Canfield-Niles Road, Austintown, Ohio 44515[3] ("Austintown Property"). [Case No. 19-40267, Doc. #1, pp. 1-2]. On Schedule A/B, California Palms stated it had no cash or cash equivalents and no accounts receivable. [*Id.*, Ex. 1, pp. 1-2]. The only creditor on California Palms, LLC's Schedule D was Pender, listed with a disputed claim of $3,118,205.00 secured by the Austintown Property. [Doc. #1, Ex. 1, p. 9]. On Schedule E/F, California Palms, LLC scheduled eight creditors as having unsecured nonpriority claims totaling $99,390.00. [*Id.*, pp. 12-15]. On Schedule G, California Palms listed a settlement agreement with Pender, a lease with Non-Debtor California Palms Addiction Recovery Campus, Inc., and a "Law office" and "Personal residence" belonging to Non-Debtor Sebastian Rucci. [*Id.*, p. 16]. California Palms, LLC's Statement of Financial Affairs stated that, as of the February 27th filing date, California Palms, LLC had $0.00 in gross revenue. [*Id.*, Ex. 4, p. 1].

On March 11, 2019, twelve days after commencement of the Chapter 11 case, California Palms filed an adversary proceeding against Pender. [Adv. Pro. No. 19-04010, Doc. #1]. In its Complaint, California Palms alleged that, in connection with a mortgage financing arrangement between the two entities, Pender was charging California Palms criminally usurious interest and violating the Ohio Mortgage Loan Act. [*Id.*, pp. 10-14]. To remedy those alleged injuries, California Palms sought rescission of its mortgage loan and November 8, 2018 Settlement[4]

---

at issue. Finally, Sebastian Rucci is Debtor California Palms, LLC's managing member [*Id.*, Ex. 8, p. 3], is a guarantor on the Pender mortgage debt [Adv. Pro. No. 19-04040, Doc. #1, Ex. 2, pp. 39-43], and is a state court judgment debtor of Pender's alongside the other California Palms parties. [*Id.*, Ex. 10, pp. 3-7].

[3]/ Both the November 8, 2018 Settlement and June 18, 2019 Settlements appear to provide 5455 Clarkins Drive, Austintown Township, Ohio as an alternative address for the Austintown Property. [Adv. Pro. No. 19-04010, Doc. #1, Ex. 6, p. 1; Case No. 19-40267, Doc. #117, p. 5]. There is no dispute that both Chapter 11 cases concerned only a single piece of real estate.

[4]/ The terms of the November 8, 2018 Settlement included the following relevant items:

> 11. **Borrower Release of Pender**: Upon execution of this Agreement, [California Palms, LLC, California Palms Addiction Recovery Campus, Inc., and Sebastian Rucci] hereby release and forever discharge Pender Parties…and [escrow agent] from any and all Claims arising out of the Loan, the Loan Documents, the Real Estate, the Escrows, or that were or could have been asserted in the [Mahoning County Court of Common Pleas Case No. 2018 CV 01015] Lawsuit, *except for* any Claims that Pender breached this Agreement. '**Pender Parties**' means, collectively, (i) Pender; (ii) Pender's parents, subsidiaries, and other affiliates; (iii) all predecessors, successors, and assigns of any of the foregoing; (iv) all servicers acting on behalf of any of the foregoing; and (v) each of their respective officers, directors, employees, agents, attorneys, and other representatives….
>
> **13. Debtor-Creditor Relationship; No Duty**: [California Palms, LLC, California Palms Addiction Recovery Campus, Inc., and Sebastian Rucci] and Pender have a debtor-creditor relationship. This

19-42174-jpg    Doc 42    FILED 01/14/20    ENTERED 01/14/20 15:20:21    Page 3 of 20

("November 8, 2018 Settlement") with Pender, and damages under multiple Ohio statutes. [*Id.*, p. 14].

On March 19, 2019, Pender filed a Motion to dismiss or, alternatively, for relief from stay [Case No. 19-40267, Doc. #20], arguing that California Palms' Chapter 11 case should be dismissed for cause, or that relief from the automatic stay should be granted so that Pender could proceed with the Austintown Property foreclosure action[5] in Case No. 2018-CV-01015 that had been filed in the Mahoning County Court of Common Pleas. That same day, Pender also filed a Motion for a determination that California Palms, LLC's bankruptcy case was a single asset real estate case under 11 U.S.C. §101(51B). [Case No. 19-40267, Doc. #21]. On April 23, 2019, the court entered an Order holding that California Palms was a single asset real estate case [*Id.*, Doc. #50] after California Palms indicated, at a hearing held on April 22, 2019, that it did not oppose that designation. A few days earlier, on April 19, 2019, California Palms had filed two Motions relevant here: a Motion to reject lease or executory contract [*Id.*, Doc. #47] that sought to reject the November 8, 2018 Settlement it had reached with Pender, and a Motion to sell property free and clear of liens [*Id.*, Doc. #49] that requested court approval of a sale of the Austintown Property that would force Pender to accept $3.7 million dollars in full satisfaction of its mortgage interest.

Though it would eventually be remanded and stricken from the docket on Pender's unopposed motion, on May 28, 2019 California Palms filed a Notice of Removal, ostensibly causing the transfer of the Mahoning County Court of Common Pleas foreclosure action against the Austintown Property,[6] Case No. 2018-CV-01015, to this bankruptcy court. [*Id.*, Doc. #88]. A

---

relationship is not, and may not be construed to be, any other kind of relationship, including a joint venture, partnership or fiduciary relationship. Although Pender has certain rights under this Agreement and the Loan Documents, these rights (1) are exclusively for Pender's protection and benefit as a creditor; (2) may, but need not, be exercised by Pender in its sole discretion, and (3) are not for the benefit of [California Palms, LLC, California Palms Addiction Recovery Campus, Inc., and Sebastian Rucci]. Neither Pender, nor any firm, entity, agent or professional retained by Pender, has a duty of disclosure, loyalty, or care to [California Palms, LLC, California Palms Addiction Recovery Campus, Inc., and Sebastian Rucci]. [California Palms, LLC, California Palms Addiction Recovery Campus, Inc., and Sebastian Rucci] have relied and will rely exclusively on their own judgment with respect to legal financial, Real Estate-related and other matters.

[Adv. Pro. No. 19-04010, Doc. #1. Ex. 6, pp. 1, 5].

[5]/ The court notes that California Palms was the plaintiff in that action, having initiated the Mahoning County Court of Common Pleas case. [Adv. Pro. No. 19-04040, Doc. #1, Ex. 1, p. 1].

[6]/ California Palms improperly filed this Notice of Removal, which may call the efficacy of the removal into question,

little over a week later, on June 5, 2019, California Palms and Pender filed a Joint Motion for orders approving compromise and dismissing the bankruptcy case[7] [*Id.*, Doc. #100], jointly averring that dismissal of the Chapter 11 case, remand of the adversary proceeding, and a renewed opportunity for California Palms to obtain refinancing of the Austintown Property[8] were an equitable resolution to the dispute between the parties. [*Id.*, p. 6]. After the court held a hearing on the Joint Motion on June 17, 2019 - at which both parties, through counsel, stated that they believed the compromise and settlement to be fair - the court approved the compromise and settlement on June 18, 2019 ("June 18, 2019 Settlement").[9] [*Id.*, Doc. #117]. That same day, the court dismissed the adversary proceeding with prejudice [Adv. Pro. No. 19-04010, Doc. #13] and dismissed California Palms' first Chapter 11 case without prejudice. [Case No. 19-40267, Doc. #120].

---

though the court did not address that issue during the pendency of California Palms' first Chapter 11 case due to the parties' subsequent compromise and settlement. However, for purposes of this decision, the court assumes without deciding that the Notice of Removal initiating Adv. Pro. No. 19-04010 was an effective transfer of the state court case to this court. It appears that the filing of the Notice of Removal that initiated the present Chapter 11 case's companion adversary proceeding, Case No. 19-04040, was procedurally proper.

[7]/ An Agreed Judgment and Decree of Foreclosure [Case No. 19-40267, Doc. #100, pp. 80-85] and a Stipulated Order Appointing Receiver [*Id.*, pp. 87-119] were attached to the joint motion. These documents were to be filed in the Mahoning County Court of Common Pleas if California Palms failed to abide by the terms of the settlement agreement underlying the parties' compromise.

A supplement to the Joint Motion was filed on June 13, 2019, making minor changes to various provisions of the settlement agreement. [*Id.*, Doc. #112]. None of those alterations have any bearing on the legal impact of the settlement agreement.

[8]/ Specifically, the June 18, 2019 Settlement provided that California Palms, as of May 31, 2019, owed Pender a total of $4,967,009.25, "*plus* additional attorneys' fees incurred from and after April 30, 2019, *plus* Property Protection Payments (as defined in paragraph 6(b) below) and Additional Taxes, *plus* interest at the rate of 22% per annum (equal to $2,444.44 per diem) accruing from and after May 31, 2019, all of which continue to be incurred or accrue." [Case No. 19-40267, Doc. #117, pp. 8-9](emphasis in original). However, the June 18, 2019 Settlement gave California Palms the opportunity to satisfy Pender's mortgage interest in full by paying to Pender, on or before August 15, 2019, the discounted sum of $4,050,000.00. [*Id.*, p. 11-12]. The June 18, 2019 Settlement expressly contemplated that time was of the essence and that, if California Palms missed the discounted payoff date of August 15, 2019, the discounted payoff offer would expire and California Palms would be liable to Pender for the full amount, including interest. [*Id.*].

The June 18, 2019 Settlement also acknowledged that California Palms was in default on its mortgage debt to Pender as of April 19, 2018, was in default of the November 8, 2018 Settlement as of January 30, 2019, and reiterated that the November 8, 2018 Settlement released Pender from liability for all claims arising out of its mortgage transaction with California Palms. [*Id.*, p. 9].

[9]/ The terms of the November 8, 2018 Settlement [Adv. Pro. No. 19-04010, Doc. #1. Ex. 6] and the June 18, 2019 Settlement [Case No. 19-40267, Doc. #117, pp. 5-20] closely track with one another, with the latter differing primarily with respect to California Palms being given a renewed opportunity to obtain refinancing of the Austintown Property.

5

**Case No. 19-42174, California Palms II**

California Palms filed the present Chapter 11 case, its second within 165 days,[10] on November 29, 2019, [Case No. 19-42174, Doc. #1]. The Petition stated that California Palms, LLC is a single asset real estate debtor as defined in §101(51B). [*Id.*, p. 2]. On Schedule A/B, California Palms listed an ownership interest in only two assets, the Austintown Property [*Id.*, Ex. 1, p. 6] and a litigation claim against a third party described as "Lender Fraud With Loan" and "Civil RICO." [*Id.*, p. 7]. California Palms' Schedule A/B indicated that it did not have any cash or accounts receivable. [*Id.*, pp. 1-2]. On Schedule D, California Palms listed one creditor, Pender, with a disputed claim of $3,187,205.00 secured by the Austintown Property. [*Id.*, p. 9]. On Schedule E/F, California Palms scheduled only two claims, both of which were listed as nonpriority unsecured debts related to "legal services." [*Id.*, p. 12]. On Schedule G, California Palms listed both of the November 8, 2018 and June 18, 2019 Settlements, a lease with Non-Debtor California Palms Addiction Recovery Campus, Inc., and a contract regarding what is described as Sebastian Rucci's personal residence. [*Id.*, p. 15] The Statement of Financial Affairs stated that, as of the November 29th filing date, California Palms, LLC had $0.00 in gross revenue. [*Id.*, Ex. 4, p. 1]. California Palms also filed an Amended Declaration of Sebastian Rucci in Support of Debtor's Chapter 11[11] [*Id.*, Doc. #5] and a Memorandum in Support of Good Faith Chapter 11 Filing. [*Id.*, Doc. #5].

On December 2, 2019, California Palms initiated Adv. Pro. No. 19-04040 by filing a Notice of Removal [Adv. Pro. No. 19-04040, Doc. #1], which again transferred the still ongoing Mahoning County Court of Common Pleas foreclosure action, Case No. 2018-CV-01015, to this

---

[10]/ The court notes that California Palms voluntarily dismissed its first Chapter 11 case [Case No. 19-40267, Doc. #120] after Pender had filed its Motion to Dismiss, or in the Alternative, for Relief from Stay. [*Id.*, Doc. #20]. Thus, if California Palms were an individual or family farmer, it would have been barred from filing the present case under §109(g)(2) until 180 days after its first case was dismissed, a period that did not begin until December 15, 2019.

[11]/ The Amended Declaration of Sebastian Rucci was accompanied by numerous attachments that appear to detail California Palms' attempts at obtaining refinancing during the leadup to this second Chapter 11 filing and alleged misconduct by Pender. While the court is able to take judicial notice of the fact that Sebastian Rucci's Amended Declaration and attachments were filed, the court will give limited weight to the Amended Declaration in determining whether to dismiss this case, particularly given Pender's objection to its evidentiary value. *See*, *In re Four Wells Ltd.*, 2016 WL 1445393 at *11, 2016 Bankr. LEXIS 1673 at **31-32 (6th Cir. BAP April 12, 2016)("[N]either statements of counsel nor exhibits to a brief are evidence unless expressly stipulated as admissible evidence. A bankruptcy court, however, may take judicial notice of the docket in the case and the content of the bankruptcy schedules for the purpose of ascertaining the timing and status of events in the case and facts not reasonably in dispute.")(citations omitted).

court. Attached to the Notice of Removal were the following documents taken from the state court docket: State Court Complaint [*Id.*, Ex. 1], Foreclosure and Answer [*Id.*, Ex. 2], Consent Order Holding Case in Abeyance [*Id.*, Ex. 3], Consent Judgment Against Guarantor Rucci [*Id.*, Ex. 4], Consent Order On Settlement [*Id.*, Ex. 5], Consent Judgment of Foreclosure [*Id.*, Ex. 6], Stipulated Order Appointing Receiver [*Id.*, Ex. 7], Order Setting Contempt Hearing [*Id.*, Ex. 8], Motion to Continue [Ex. 9], Agreed Contempt Judgment [*Id.*, Ex. 10], and Motion for New Trial [*Id.*, Ex. 11].

Pursuant to the Stipulated Order Appointing Receiver, which was part of the June 18, 2019 Settlement approved by this court, the Mahoning County Court of Common Please appointed John K. Lane as Receiver ("Receiver") over California Palms, LLC on August 22, 2019. [Adv. Pro. No. 19-04040, Doc. #1, Ex. 7]. The Receiver filed a Request for Instructions on December 3, 2019 [Case No. 19-42174, Doc. #10], asking this court court for guidance in light of California Palms' second Chapter 11 filing. On December 12, 2019, Pender filed the present Motion to Dismiss [*Id.*, Doc. #20], which was set for hearing on December 30, 2019. The court held a hearing on the Receiver's Request for Instructions on December 16, 2019, after which the court issued an Order outlining the Receiver's limited continuing duties. Those duties were actions necessary to preserve the status quo[12] while the court heard and decided Pender's Motion to Dismiss. [*Id.*, Doc. #29].

On December 23, 2019, the Receiver filed a Status Report, confirming that the Austintown Property was covered by an appropriate in-force insurance policy [Doc. #33, p. 3] and that California Palms had paid the Receiver the $25,000.00 discussed at the December 16th hearing. [*Id.*, p. 6]. However, the Receiver reported that, while he was not given access to California Palms' utilities accounts, he was provided with a copy of the Austintown Property's gas and water bill. [*Id.*, Ex. A]. Based on the limited information available, the Receiver reported that utilities at the Austintown Property appeared "in imminent danger of being shut off" and that "[l]ack of payment of the utilities bills appears to have been an ongoing issue with the Debtor." [*Id.*, p. 4]. The

---

[12]/ Specifically, the court gave the Receiver the following tasks regarding oversight of the Austintown Property: "(1) confirm that the real property located at 1051 N. Canfield-Niles Road, Austintown, Ohio ("Austintown Property") remains covered by an appropriate insurance policy; (2) confirm that utilities for the Austintown Property remain paid in full; (3) obtain a periodic patient census from Debtor regarding the number of the patients remaining at the Austintown Property; and (4) otherwise monitor the Austintown Property with an eye towards maintaining the safety and security of the property and preserving the status quo." [Doc. #29, p. 2]. The court also noted that, at the December 16th hearing, California Palms agreed to contribute $25,000.00 to the Receiver to assist in compensating him for his limited oversight duties. [*Id.*].

Receiver also reported that, given the incomplete information provided by California Palms, he was "uncertain of the actual census of patients on site at the Austintown Property" and had concerns regarding admission of "scholarship patients" that appeared to be receiving treatment free of charge. [*Id.*, p. 5]. Nevertheless, the Receiver reported that he was "aware of no actions or inactions causing immediate crisis." [*Id.*, pp. 5-6].

At the December 30th hearing on Pender's Motion to Dismiss, counsel for Pender, counsel for California Palms, counsel for the United States Trustee, and Sebastian Rucci attended. Both Pender and California Palms presented arguments on the Motion to Dismiss, and Pender submitted certified copies of docket items taken from the Mahoning County Court of Common Pleas foreclosure action, which were admitted as evidence without objection. Pender objected to the evidentiary value of the Amended Declaration of Sebastian Rucci Doc. #5], noting that it contained both unsubstantiated allegations and statements that only an expert would be qualified to speak to. After a brief recess, counsel for California Palms stated that the Debtor would be willing to withdraw its Notice of Removal and remand the foreclosure action back to state court, but that it still intended to pursue its second Chapter 11 case even if the state court foreclosure action were remanded and allowed to proceed. Unreceptive to that offer, Pender elected to stand on its Motion to Dismiss. The matter was subsequently submitted for decision.

On January 14, 2020, 15 days after the court heard arguments on Pender's Motion to Dismiss, California Palms filed a Notice Withdrawing Rule 60(b) Motion and Request for Sua Sponte Remand [Adv. Pro. No. 19-04040, Doc. #16]. However, as of the date of this Memorandum Decision, the court has not ruled on California Palms' Request, and the foreclosure action that originated in the Mahoning County Court of Common Pleas remains before this court as an adversary proceeding. Also on January 14, 2020, California Palms filed a Motion to Reject Lease or Executory Contract. [Case No. 19-42174, Doc. #41].

## LEGAL ANALYSIS

Pender offers three theories regarding why this Chapter 11 case should be dismissed: (1) *res judicata* stemming from this court's orders in California Palms first Chapter 11 case; (2) "for cause" dismissal under §1112(b); and (3) application of the *Rooker-Feldman* doctrine to this case. However, the court finds that Pender's *res judicata* and *Rooker-Feldman* arguments are insufficient standing alone. However, these arguments implicate concerns that are built into and

8

addressed by the Sixth Circuit's "bad faith" factors set forth in *Trident*. Thus, the court will couch its analysis primarily in terms of whether California Palms filed the present case in bad faith such that cause to dismiss exists under §1112(b).

**"For Cause" Dismissal Under §1112(b)**

Section 1112(b)(1) of the Bankruptcy Code states in relevant part:

[O]n request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, *for cause*….

Whether cause for dismissal under §1112(b) exists turns on "a case-specific, factual inquiry which 'focuses on the circumstances of each debtor.'" *In re Creekside Sr. Apartments, L.P.*, 489 B.R. 51, 60 (6th Cir. BAP 2013)(quoting *United Savs. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd* (*In re Timbers of Inwood Forest Assocs., Ltd.*), 808 F.2d 636, 371-72 (5th Cir. 1987)(*en banc*), *aff'd*, 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988)). "The party seeking dismissal carries the burden of proving that cause exists by a preponderance of the evidence." *In re Althaus Investors Ltd.*, 2019 WL 5588828 at *4, 2019 Bankr. LEXIS 3399 at *12 (Bankr. N.D. Ohio October 29, 2019)(citing *Creekside*, 489 B.R. at 60); *see also*, *In re Lee*, 467 B.R. 906, 917 (6th Cir. BAP 2012).

Pender specifically alleges that California Palms' second Chapter 11 case should be dismissed for having been filed in bad faith under §1112(b). The Sixth Circuit Court of Appeals has set forth the following eight factors for courts to consider when deciding whether a bad faith dismissal is appropriate under §1112(b):

(1) the debtor has one asset;

(2) the pre-petition conduct of the debtor has been improper;

(3) there are only a few unsecured creditors;

(4) the debtor's property has been posted for foreclosure, and the debtor has been unsuccessful in defending against the foreclosure in state court;

(5) the debtor and one creditor have proceeded to a standstill in state court litigation, and the debtor has lost or has been required to post a bond which it cannot afford;

(6) the filing of the petition effectively allows the debtor to evade court orders;

9

(7) the debtor has no ongoing business or employees; and

(8) the lack of possibility of reorganization.

*Trident Assocs. Ltd. P'ship v. Metropolitan Life Ins. Co.* (*In re Trident Assocs. Ltd. P'ship*), 52 F.3d 127, 131 (6th Cir. 1995)(quoting *Laguna Assocs. Ltd. P'ship v. Aetna Casualty & Surety Co. (In re Laguna Assocs. Ltd. P'ship)*, 30 F.3d 734, 738 (6th Cir. 1994)).

The eight *Trident* factors are not exhaustive, nor is any single factor dispositive with regard to whether bad faith exists. *Id.* (quoting *Laguna Assocs.*, 30 F.3d at 738); *see also*, *Lee*, 467 B.R. at 917 ("No single test exists for determining whether a bankruptcy petition was filed in good faith.")(citation omitted). Instead, a court determining whether a case was filed in bad faith "must look at the factors together and determine whether the petitioner sought to achieve objectives outside the legitimate scope of the bankruptcy laws when filing for protection under Chapter 11." *In re Four Wells Ltd.*, 2016 WL 1445393 at *14, 2016 Bankr. LEXIS 1673 at *40 (6th Cir. BAP April 12, 2016) (citing *Primestone Inv. Partners, L.P. v. Vornado PS, L.L.C.* (*In re Primestone Inv. Partners, L.P.*), 272 B.R. 554, 557 (D. Del. 2002)(citation omitted)). In other words, a bad faith analysis under §1112 is a "'fact-specific and flexible determination' that must be made on a case-by-case basis by looking to a totality of the circumstances." *Lee*, 467 B.R. at 917 (quoting *Alt v. United States* (*In re Alt*), 305 F.3d 413, 419 (6th Cir. 2002)).

In addition to the eight *Trident* factors described above, courts deciding whether a Chapter 11 petition was filed in bad faith have also looked to "whether the debtor has filed previous bankruptcy petitions; whether the debtor is generating any cash or income; whether there is pressure from non-moving creditors; whether the case is a two (2) party dispute which can be resolved in pending non-bankruptcy court litigation; and whether the debtor was formed immediately prior to the petition." *In re Four Wells Ltd.*, 2016 WL 1445393 at *11, 2016 Bankr. LEXIS 1673 at *32 (citing *Primestone Inv.*, 272 B.R. at 557); *see*, *Lee*, 467 B.R. at 918 (noting that tentative prospects of future income, and serial Chapter 11 filings, can both be indicative of bad faith).

The court will address each of the *Trident* factors, and then the additional *Four Wells Ltd.* considerations in turn.

The first *Trident* factor, which asks whether California Palms is a single asset debtor, is satisfied here. California Palms described itself as a single asset real estate debtor on its Petition

19-42174-jpg    Doc 42    FILED 01/14/20    ENTERED 01/14/20 15:20:21    Page 10 of 20

that initiated this case [Doc. #1, p. 2] and listed only one piece of real or personal property on its Schedules, the Austintown Property. [*Id.*, Ex. 1, pp. 1-8]. While California Palms also listed a litigation claim against third-parties described as "civil RICO" with an estimated value of one million dollars, a yet-to-be commenced cause of action with an unproven value is of marginal relevance to California Palms' overall status as a debtor. Further, in California Palms' first Chapter 11 case, the court entered an order expressly finding that California Palms, LLC was a single asset real estate debtor as defined in §101(51B). [Case No. 19-40267, Doc. #50]. Thus, the court finds that California Palms, LLC essentially has only one asset, the Austintown Property.

California Palms argues that the first *Trident* factor only applies when the debtor is a newly formed business entity, described in case law as "new debtor syndrome." Therefore, because California Palms, LLC is not a recently formed corporation, it asserts that the first factor is not present, and should not weigh in favor of dismissal here. However, the court finds that this argument overlooks the extent to which each and every *Trident* factor must be viewed through the lens of the facts of the case at hand. *See*, *Lee*, 467 B.R. at 917 (quoting *Alt*, 305 F.3d at 419). While it is true that both *Laguna* and *Trident* discussed a debtor that had been formed "at the eleventh hour," those cases set forth a bad faith analysis that was to be applied on a case-by-case basis. *See*, *Trident*, 52 F.3d at 131 (quoting *Laguna*, 30 F.3d at 737). Here, California Palms may not be a new debtor, but it is a single asset real estate debtor, satisfying the plain language of the first *Trident* factor.

California Palms relies heavily on *Althaus Investors*, arguing that this court should find that the first *Trident* factor is not met here on the same grounds described in that case. However, *Althaus Investors* dealt with a very different set of facts. In *Althaus Investors*, the court emphasized the fact that the landlord debtor's case was inextricably intertwined with a related, separate Chapter 11 case that involved the landlord debtor's tenant, a custom metal stamper that owned a substantial amount of machinery and employed numerous employees. 2019 WL 5588828 at **1, 5, 2019 Bankr. LEXIS 3399 at **2, 14-16.

Here, the tenant occupying the Austintown Property is not a Chapter 11 debtor, and the business information regarding California Palms Addiction Recovery Campus, Inc.'s is sparse. The Amended Declaration of Sebastian Rucci makes some unsubstantiated claims, but he is an insider (at least of California Palms) whose advocacy is of questionable value. Further, this case

11

is a second Chapter 11 filing, whereas *Althaus Investors* dealt with a debtor that had not previously filed for Chapter 11 relief previously. 2019 WL 5588828 at *6, 2019 Bankr. LEXIS 3399 at *16. In light of that factual dissimilarity, the court finds that *Althaus Investors* is of limited relevance as to whether the first *Trident* factor supports a finding that this case was filed in bad faith.

Though the court finds that the first *Trident* factor is met here, that factor weighs only slightly towards dismissal when considered standing alone, particularly given that the Bankruptcy Code expressly allows the filing of single asset real estate Chapter 11 cases as defined in §101(51B).[13] *See*, 7 Collier on Bankruptcy ¶ 1112.07(6)(b)(ii) (16th Ed. 2019)("[T]he mere fact that a case involves a "single asset" does not, by itself, mean that the chapter 11 filing must be in bad faith. Although many bad faith cases do involve single asset debtors, it does not follow that all single asset cases are of this character."). However, the fact that California Palms' business is intertwined with a single piece of real estate that is the subject of its dispute with Pender, its primary creditor, informs the rest of the circumstances surrounding this case. Specifically, California Palms would need to meet the requirements of §362(d)(3)[14] in order to maintain this

---

[13]/ It appears that both of the the lower court decisions reviewed on appeal in *Trident* and *Laguna* were decided before Congress amended §101 to include the definition for a "single asset real estate" debtor in October of 1994. *See*, 10 Norton Bankr. L. & Prac. 3d 11 U.S.C. § 101(51B). Among its provisions, the Bankruptcy Reform Act of 1994 limited the "single asset real estate" definition to debtors with less than $4,000,000.00 in noncontingent, liquidated secured debts and amended §362 to provide creditors with a streamlined process for pursuing relief from stay with regard to a single asset real estate debtor. *Id.* In 2005, the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 removed the $4,000,000 cap from the "single asset real estate" definition, expanding its applicability. *Id.*; 2 Norton Bankr. L. & Prac. 3d § 43:48 ("The Bankruptcy Reform Act of 1994 introduced special treatment for stay relief motions in single asset real estate cases and the 2005 Amendments expanded these provisions in [Section] 362(d)(3).").

In light of the history of the single asset real estate legislation, the first *Trident* factor and its emphasis on whether the debtor has only one asset may be viewed as a judicially created predecessor to the Code's exacting treatment of single asset real estate cases. In any case, the evolution of single asset real estate legislation makes clear that those cases receive increased scrutiny, and shorter deadlines, under the Code.

[14]/ In order to keep the automatic stay in effect as to the Austintown Property were this case allowed to proceed, California Palms would need to, within 90 days of filing, either propose a Chapter 11 plan "that has a reasonable possibility of being confirmed within a reasonable time" or make monthly payments to Pender "equal to interest at the then applicable nondefault contract rate of interest" on the value of Pender's interest in the Austintown Property. 11 U.S.C. §362(d)(3).

Here, California Palms has not submitted a proposed Chapter 11 plan, and the plan it submitted in its first Chapter 11 case relied on court findings that Pender committed a litany of bad acts [Case No. 19-40267, Doc. #2], findings that neither this court nor the Mahoning Court of Common Pleas have made. Further, given that California Palms has listed $0.00 in gross revenue [Case No. 19-42174, Doc. #1, Ex. 3, p. 1] and no accounts receivable [*Id.*, Ex. 1, p. 2], it seems highly unlikely that California Palms would be able to make the monthly payments required in lieu of a confirmable plan.

second Chapter 11 case. Thus, the court will be mindful of the fact that this is essentially a single asset case as it considers the other *Trident* factors.

With regard to the second *Trident* factor, the court finds that California Palms has engaged in at least some conduct that can be characterized as "improper", weighing in favor of a finding of bad faith. At the time this second Chapter 11 case was filed, California Palms was in civil contempt of the Mahoning County Court of Common Pleas by failing to comply with the terms of the June 18, 2019 Settlement [Adv. Pro. No. 19-04040, Doc. #1, Ex. 10, p. 2], a settlement approved by both this court [Case No. 19-40267, Doc. #117] and the state court. [Adv. Pro. No. 19-04040, Doc. #1, Ex. 5]. Rather than vacating the Austintown Property in accordance with the terms of a settlement it entered into before this court, California Palms stalled and then consented to a state court order finding it in contempt.

And this is not the first time that California Palms has sought to avoid the consequences of a settlement with Pender. In the first Chapter 11 case and its companion adversary proceeding, California Palms attempted to set aside the earlier November 8, 2018 Settlement or avoid its consequences in a variety of ways, from rescission on a theory of criminal usury [Adv. Pro. No. 19-04010, Doc. #1, pp. 10-14] to rejection of the settlement as an executory contract under §365(a) [Case No. 19-40267, Doc. #47] to a sale of the Austintown Property free and clear of Pender's interest. [*Id.*, Doc. #49]. Considered in isolation, none of those acts would constitute improper pre-petition conduct and each relied on arguably colorable legal theories. But, taken as a whole, California Palms' conduct in the first Chapter 11 case and during the leadup to this second case exhibits a pattern of attempting to undo freely-entered-into, court-supervised agreements shortly after they were reached. The court finds that this conduct was improper for purposes of the second *Trident* factor.

California Palms argues that Pender is the party that committed prepetition misconduct, averring that Pender refused to entertain refinancing deadline extensions and demanded an increased payoff when California Palms again defaulted on its mortgage obligations under the June 18, 2019 Settlement. However, California Palms fails to connect Pender's alleged misconduct with any of the terms contained in either the November 8, 2018 Settlement or the June 18, 2019 Settlement. Further, Pender and California Palms are sophisticated business entities that have only a debtor-creditor relationship with one another. [Case No. 19-40267, Doc. #117, p. 16]; *see also*,

13

*supra* n.4. In short, Pender was not obligated to renegotiate when California Palms failed to abide by the terms of a court-supervised settlement for at least the second time. In fact, the June 18, 2019 Settlement expressly stated that Pender had "sole and absolute discretion" to extend the August 15, 2019 deadline [*Id.*, p. 12], discretion it utilized when it declined to entertain California Palms' request. Accordingly, the fact that Pender pursued its remedies against California Palms during the lead-up to this second Chapter 11 case does not alter the court's conclusion that the second *Trident* factor weights in favor of a bad faith dismissal.

The third *Trident* factor, which asks if the debtor has only a few unsecured creditors, weighs in favor of a finding of bad faith here. California Palms scheduled only two unsecured creditors, both of which appear related to legal debts incurred in relation to its dispute with Pender. [Doc. #1, Ex. 1, p. 12]. California Palms does not dispute that this factor weighs in favor of dismissal. [Case No. 19-42174, Doc. #37, p. 30]. Thus, the court finds that the third *Trident* factor weighs in favor of dismissal here.

The fourth, fifth, and sixth *Trident* factors all contemplate the status of related state foreclosure actions and compliance with court orders, so the court will address these three factors together. The Austintown Property is the subject of the Mahoning County foreclosure action that has been removed to this court, and California Palms remains subject to a live contempt judgment, albeit one that is currently stayed under §362(a). Rather than purge that contempt by complying with the state court's orders, California Palms filed a second Chapter 11 case, removed the Mahoning County foreclosure action to this court for the second time [Adv. Pro. No. 19-04040, Doc. #1], and filed a motion under Federal Rule of Civil Procedure 60(b)(3) seeking relief from the state court's Agreed Contempt Judgment. [*Id.*, Doc. #9].

Thus, California Palms' primary asset is in foreclosure[15] and California Palms has been unsuccessful in defending against that foreclosure such that it was found in contempt for not vacating the premises of the Austintown Property. While California Palms makes much of the fact that there remain multiple steps were Pender allowed to proceed with foreclosure, the submitted

---

[15]/ The fourth *Trident* factor's use of the "was posted for foreclosure" phrase may be due to the fact that both *Trident* and *Laguna* dealt with real estate located in Michigan, a state that allows for non-judicial foreclosure by way of advertisement. *See*, *Conlin v. Mortg. Elec. Registration Sys., Inc.*, 714 F.3d 355, 359 (6th Cir. 2013)(describing Michigan's foreclosure-by-advertisement scheme). Ohio, on the other hand, does not allow non-judicial foreclosure, so the court is mindful of that difference as it applies the fourth *Trident* factor to the facts of this case.

14

state court documents, including the Agreed Contempt Judgment, make it clear that California Palms has been losing its state court fight with Pender.

While debtors regularly file bankruptcy petitions in connection with adverse state court actions, few file a second Chapter 11 case to undo a settlement approved in a prior bankruptcy case. Fewer still seek to utilize the Federal Rules to undo the standing contempt orders of a state court by way of removal. Taken together, those acts on the part of California Palms suggest that this second Chapter 11 case was filed as a litigation tactic intended to evade both the June 18, 2019 Settlement and the Agreed Contempt Judgment. *See*, *Four Wells Ltd.*, 2016 WL 1445393 at *14, 2016 Bankr. LEXIS 1673 at *40 (courts analyzing bad faith under §1112(b) "must determine whether the petitioner sought to achieve objectives outside the legitimate scope of the bankruptcy laws when filing for protection under Chapter 11."). Thus, the court finds that the plain language of the fourth, fifth, and sixth *Trident* factors weighs in favor of a finding of bad faith in this case.

The seventh *Trident* factor, which looks to whether the debtor has ongoing business or employees, and the eighth *Trident* factor, which looks to whether the debtor lacks the possibility of reorganization, also point towards a finding of bad faith. Despite Debtor California Palms, LLC's insistence that its connection with Non-Debtor California Palms Addiction Recovery Campus, Inc. constitutes a valid business relationship, facts set forth by the Debtor in its own submitted documents point the other way. For example, Debtor California Palms, LLC's Statement of Financial Affairs in both Chapter 11 cases stated that the Debtor earned $0.00 in gross revenue [Case No. 19-40267, Doc. #1, Ex. 4, p. 1; Case No. 19-42174, Doc. #1, Ex. 3, p. 1] and did not have an interest in any accounts receivable. [Case No. 19-40267, Doc. #1, Ex. 1, p. 2; Case No. 19-42174, Doc. #1, Ex. 1, p. 2]. In other words, Debtor California Palms, LLC has not been charging and/or collecting rent from its tenant,[16] significantly undermining its assertions that it is actively engaged in business as a landlord and can be reorganized under Chapter 11. [Case

---

[16]/ A lease agreement between California Palms Hotel, Inc. (an apparent predecessor of the Debtor) and California Palms Addiction Recovery Campus, Inc. [Case No. 19-40267, Doc. #11, Ex. 1, p. 145] and a profit and loss statement [*Id.*, Doc. #2, Ex. 2, p. 48] appear to state that California Palms Addiction Recovery Campus, Inc. is required to pay the Debtor a monthly lease payment of $50,000.00. Contrary to that figure, however, California Palms, LLC has stated twice in sworn Schedules that it receives $0.00 in gross revenue [Case No. 19-40267, Doc. #1, Ex. 4, p. 1; Case No. 19-42174, Doc. #1, Ex. 3, p. 1] and has no outstanding accounts receivable. [Case No. 19-40267, Doc. #1, Ex. 1, p. 2; Case No. 19-42174, Doc. #1, Ex. 1, p. 2].

19-42174-jpg    Doc 42    FILED 01/14/20    ENTERED 01/14/20 15:20:21    Page 15 of 20

No. 19-42174, Doc. #1, Ex. 1, p. 2]. Further, the Receiver's Status Report raises concerns regarding the payment of utilities, and the possibility that patients are being treated without charge. [Doc. #33, pp. 4-5].

Moreover, there is little credible evidence that Debtor California Palms, LLC and Non-Debtor California Palms Addiction Recovery Campus, Inc. are engaged in a legitimate contract-based business relationship. Importantly, the only submitted lease document outlining the alleged lessor-lessee relationship between the Debtor and the Non-Debtor tenant appears to have been executed by Sebastian Rucci on behalf of both parties. [Case No. 19-40267, Doc. #11, Ex. 1, pp. 143-150]. Additionally, the evidence for California Palms' averments regarding Non-Debtor California Palms Addiction Recovery Campus, Inc. are based on the Amended Declaration of Sebastian Rucci. That Amended Declaration cannot overcome the sworn statements in the Schedules, or the objections based on Sebastian Rucci's status as an insider, a co-debtor on the Pender debt, an advocate (he filed the Petition in California Palms' first Chapter 11, and filed the early pleadings in that case), and a lack of foundation for many of the statements made in his Amended Declaration, particularly those that would require qualification as an expert witness.

Accordingly, the court rejects the argument that the employees of Non-Debtor California Palms Addiction Recovery Campus, Inc. should be counted as employees of Debtor California Palms, LLC for purposes of the seventh *Trident* factor.

California Palms' ability to effectuate a reorganization under Chapter 11 in this case also raises unique concerns of comity with state courts given the posture of the removed foreclosure action. Whether or not California Palms is able to reorganize turns primarily on the outcome of Pender's foreclosure action on the Austintown Property,[17] a now removed state court legal proceeding that is before this court premised solely on "related to" jurisdiction under 28 U.S.C. §§1334 and 1452(a). [Adv. Pro. No. 19-04040, Doc. #1, p. 3]. In other words, but for this second Chapter 11 filing, federal courts would only have jurisdiction over the Mahoning County foreclosure action[18] if it were appealed up to the Ohio Supreme Court, and then to the Supreme Court of the United States under 28 U.S.C. §1257(a).

---

[17]/ Counsel for California Palms stated that the Debtor could reorganize even if the foreclosure action were allowed to proceed, but that position seems at odds with the fact that, in that action, California Palms is subject to a standing order of contempt for failing to vacate the premises of the Austintown Property.

[18]/ As noted above, California Palms, LLC, an Ohio limited liability corporation, was the party that initiated the

16

In light of the unique jurisdictional posture of the removed state court action, now an adversary proceeding, that goes to the heart of the merits of this second Chapter 11 case, the court finds that principles of comity with state courts weigh in favor of dismissal. That is because California Palms' attempt to obtain relief from a state court judgment under Rule 60(b)(3) in an adversary proceeding premised solely on "related to" jurisdiction appears to be, in effect, analogous to an appeal of the Agreed Contempt Judgment of the Mahoning County Court of Common Pleas directly to this lower federal court.

This tactic appears to violate principles of comity underlying the *Rooker-Feldman* doctrine, a doctrine that prohibits state court losers from filing suit in federal court after state court proceedings have ended, seeking redress of an injury stemming from an adverse state court judgment. *Exxon Mobil Corp. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291-92, 125 S.Ct. 1517, 1526, 161 L.Ed.2d 454 (2005). Although, arguably, the *Rooker-Feldman* doctrine may not be controlling because there is no final judgment in the Mahoning County proceedings, the court finds that the principles underlying the doctrine weigh in favor of dismissal of this case given the direct tie between California Palms' ability to reorganize and the impact of the standing Agreed Contempt Judgment, a state court order California Palms has asked this court to vacate under the Federal Rules.[19]

---

state court action in the Mahoning County Court of Common Pleas back in April of 2018 [Adv. Pro. No. 19-04040, Doc. #1, Ex. 1]. Thus, it does not appear that federal courts would have diversity jurisdiction over the removed state court foreclosure action because: (1) California Palms' Notice of Removal was premised solely on "related to" jurisdiction; (2) the Mahoning County foreclosure action was initiated more than one year ago; and (3) California Palms, the plaintiff, is the party that originally filed suit. *See*, *Little Rest Twelve, Inc. v. Visan*, 458 B.R. 44, 58 (S.D.N.Y. 2011)(finding that diversity jurisdiction is not present where the case in question was removed "more than nine months late", the notice of removal did not invoke diversity jurisdiction, and the plaintiff had initiated the suit in question in state court).

[19]/ Because the state court order California Palms sought relief from is an order of contempt, this second Chapter 11 case and related adversary proceeding also implicate concerns raised by abstention under *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), a doctrine that favors federal court abstention where an important state interest, such as a state's contempt process, is involved in a federal suit. *See*, *Juidice v. Vail*, 430 U.S. 327, 335-36, 97 S.Ct. 1211, 1217-18, 51 L.Ed.2d 376 (1977)("[W]e think the salient fact is that federal-court interference with the State's contempt process is an offense to the State's interest…likely to be every bit as great as it would be were this a criminal proceeding. Moreover, such interference with the contempt process not only unduly interferes with the legitimate activities of the state, but also can readily be interpreted as reflecting negatively upon the state courts' ability to enforce constitutional principles.")(quotations and citations omitted). The court need not decide whether *Younger* abstention under *Juidice* applies here in order for it to acknowledge the importance of respect for state court contempt judgments in the context of this Motion to Dismiss.

17

Accordingly, the court finds that both the seventh and eighth *Trident* factors weigh in favor of dismissal because California Palms has no ongoing business or employees and lacks the possibility of reorganization *See*, *Lee*, 467 B.R. at 918 ("A debtor with no current income and whose prospects for future income are tentative at best will have difficulty demonstrating that he has any good faith ability to effectuate a plan of reorganization under Chapter 11")(quotation and citation omitted). Further, granting California Palms the relief it requests in the removed state court proceeding, relief that plays a central role in the likelihood of the Debtor's reorganization, implicates concerns of comity with the Mahoning County Court of Common Pleas' foreclosure and contempt processes.

Lastly, three additional considerations taken from *Four Wells Ltd.* deserve mention. At the risk of belaboring these points, this is California Palms' second Chapter 11 case, it has filed two successive Statements of Financial Affairs stating that it receives $0.00 in gross revenue, and both this Chapter 11 and its companion removed state court proceeding figure as little more than a prolonged two-party dispute between Pender and California Palms, all of which further weigh in favor of the court dismissing this case as a bad faith filing.

In sum, in applying the *Trident* factors, the additional *Four Wells Ltd.* considerations, and looking to the circumstances of this case as a whole, the court finds that this Chapter 11 case was filed in bad faith under §1112(b) and should be dismissed.

## CONCLUSION

At this stage in the lengthy dispute between Pender and California Palms, the court concludes that this Chapter 11 case should be dismissed, and Adversary Proceeding No. 19-04040 should be remanded back to the state court in which it originated. Had California Palms elected to pursue the legal theories that it claims justify this second case when it first filed for Chapter 11 relief, the outcome here may have been different. Instead, California Palms made business decisions to enter into multiple arms-length legal agreements with Pender,[20] including a

---

[20]/ California Palms argues that its failure to abide by the terms of the June 18, 2019 Settlement and Agreed Contempt Judgment should be excused under a theory of economic duress, an Ohio legal doctrine that excuses a breach of contract where the breaching party can show: "(1) that one side involuntarily accepted the terms of another; (2) that circumstances permitted no other alternative; and (3) that said circumstances were the result of coercive acts of the opposite party." *Local 17 Intern. Ass'n of Bridge, Structural, and Ornamental Iron Workers Pension Fund v. Mooney Welding, Inc.*, 993 F.Supp. 615, 618 (N.D. Ohio 1997). The court finds this argument unpersuasive for three reasons. First, while California Palms correctly points out that, generally speaking, settlements are construed as contracts, it fails to show how, in a removed action, a federal bankruptcy court is empowered to excuse a party's contempt of a

18

compromise and settlement approved by this court, in pursuit of a time-limited opportunity for refinancing that, unfortunately, fell through. Allowing California Palms to avoid the consequences of those business decisions with a second Chapter 11 case that has almost no chance of reorganizational success would only countenance California Palms' pattern of seeking to undo settlement agreements shortly after execution. The court finds that, against that backdrop, this case must be dismissed as a bad faith filing under §1112(b)(1), and the removed foreclosure action must be remanded back to state court.

One final note regarding California Palms' last minute filings: a request for remand of the Mahoning County foreclosure action [Adv. Pro. No. 19-04040, Doc. #16], a request that was filed on the last day of the 15-day period this court is given to rule on a Motion to Dismiss under §1112(b)(3), and a Motion to Reject Lease or Executory Contract.[21] [Case No. 19-42174, Doc. #41]. The court finds that these last-minute filings do not change its dismissal analysis because they typify California Palms' pattern of submitting itself to both state and federal courts, only to withdraw at the eleventh hour. In other words, California Palms has repeatedly attempted to "flip the script" just prior to courts deciding issues it has raised. In light of that pattern, California Palms' late request for remand further weighs in favor of dismissal of this Chapter 11 case given every party's interest in bringing this dispute to a close. *See*, *In re Packard Square, LLC*, 575 B.R.

---

state court order under Federal Rule of Civil Procedure 60(b)(3) using the Ohio doctrine of economic duress. California Palms has not presented any cases in which a federal court has walked that path.

Second, the court finds that, upon preliminary review, the elements of economic duress are not present here, particularly given California Palms pattern of attempting to undo agreements shortly after it consents to them. For example, instead of consenting to the June 18, 2019 Settlement, California Palms could have submitted its claims against Pender for decision by this court during the pendency of its first Chapter 11 case. Thus, California Palms had an alternative to entering into the June 18, 2019 Settlement, rendering its economic duress argument unpersuasive.

Third, Ohio law entertains challenges to consent judgments by way of direct appeal where a party alleges fraud or a lack of consent. *See*, *Smith v. Hilt*, 72 72 N.E.3d 1108, 1112 (Ohio Ct. App. 2016). Thus, California Palms' economic duress argument aimed at the Agreed Contempt Judgment heightens the *Rooker-Feldman* concerns already present in this case because it is raising an argument in federal court that could have been brought in state court on direct appeal. *See*, *Launder v. Doll*, 585 B.R. 446, 461 (Bankr. N.D. Ohio 2018)("Generally speaking, the *Rooker-Feldman* doctrine prohibits lower federal courts from engaging in appellate review of state court decisions.")(citation omitted).

For those three reasons, the court finds California Palms' economic duress argument unavailing here, although it is free to raise that issue in state court on remand.

[21]/ A recently issued United States Supreme Court decision raises questions concerning what California Palms would achieve were it allowed to reject a court-approved settlement as an executory contract. *See*, *Mission Product Holdings, Inc. v. Tempnonology, LLC*, __U.S.__, 139 S.Ct. 1652, 203 L.Ed.2d 876 (2019).

19

768, 783 (Bankr. E.D. Mich. 2017)(finding dismissal, not suspension, of a Chapter 11 case appropriate in the context of companion state court receivership proceedings because "[a] dismissal will avoid any needless confusion or doubt about the ability of the Receiver and the state court in the receivership case to carry on, as if no bankruptcy had been filed.").

**IT IS THEREFORE ORDERED** that Creditor Pender Capital Asset Based Lending Fund I, LP's Motion to Dismiss [Doc. #20] be, and hereby is, **GRANTED**. Debtor California Palms, LLC's Chapter 11 case, Case No. 19-42174, is **DISMISSED without prejudice**. Adversary Proceeding No. 19-04040 will be remanded to the Mahoning County Court of Common Pleas by separate order.